## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MATTHEW AUGUST LeFANDE,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**DISTRICT OF COLUMBIA,**<br><br>**Defendant.** | **Civil Action 09-217 (BJR)** |

## MEMORANDUM OPINION AND ORDER

Plaintiff Matthew LeFande, proceeding *pro se*, brings this action against defendant District of Columbia ("District"), alleging a violation of his First Amendment rights, breach of contract, and defamation. This case arises from LeFande's termination from his position as a Police Reserve Officer ("PRO") with the Metropolitan Police Department ("MPD"). Before the Court is the District's motion to dismiss LeFande's breach of contract and defamation claims for failure to state a claim upon which relief may be granted [#14]. The District also seeks to dismiss LeFande's claim for punitive damages. Upon consideration of the motion, the opposition thereto, and the record of this case, the Court concludes that the motion should be granted.

## I. BACKGROUND

### A.    Factual Background

As alleged by LeFande, he began serving as a PRO in 1993. Compl. ¶ 12. As a PRO, LeFande was among a corps of unpaid volunteers who provided assistance to the MPD. *See Griffith v. Lanier,* 521 F.3d 398, 399 (D.C. Cir. 2008) (describing the role of PROs). In October

2003, LeFande was suspended from his duties after he criticized the MPD in an article published by the Washington City Paper.  Compl. ¶¶ 13–15.  The MPD subsequently issued an official reprimand and declined to reinstate him.  Compl. ¶¶ 17–18.  That incident formed the basis of a lawsuit LeFande brought against the MPD in January 2005 for deprivation of his speech and due process rights and common law defamation.  *LeFande v. District of Columbia*, Civ. No. 05-00203 (D.D.C. Jan. 27, 2005) ("*LeFande I*").  *LeFande I* was settled in February 2006. According to LeFande, the District promised to return him to his position as a PRO in exchange for LeFande agreeing to dismiss the lawsuit.  Compl. ¶ 21.[1]

Later in 2006, the MPD issued a General Order that limited the collective bargaining rights of PROs and provided that PROs could be dismissed at will.  MPD Gen. Order No. 101.3 (Mar. 28, 2006).  Several PROs filed a lawsuit challenging the MPD's authority to issue the General Order, and LeFande, who is also a lawyer, represented them in that action.  *See Griffith v. Lanier*, 2007 WL 950087 (D.D.C. Mar. 28, 2007).  The Honorable Henry H. Kennedy, Jr. dismissed the *Griffith* plaintiffs' case for failure to state a claim upon which relief could be granted.  They then appealed to the D.C. Circuit.  On January 8, 2008, one week before oral argument was scheduled on the appeal, the MPD terminated LeFande from his PRO position

---

[1]    While LeFande alleges the existence of a 2006 settlement agreement in which the District promised to return LeFande to his voluntary position in exchange for LeFande dropping a lawsuit against the District, LeFande has not attached a copy of the putative agreement to his Complaint.  In light of the liberal notice pleading standards embodied in Rule 8(a) of the Federal Rules of Civil Procedure, the Court finds that LeFande has sufficiently alleged the existence of a contract such that the Court may proceed in evaluating the District's motion to dismiss.  *See Pierce v. Montgomery Cnty. Opportunity Bd.*, 884 F. Supp. 965, 970 (E.D. Pa. 1995) (Rule 8(a) "permits a plaintiff to assert the existence of an express, written contract either by setting it forth verbatim in the complaint, attaching a copy as an exhibit, or to plead it according to its legal effect." (citing 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1235 at 272–73 (1990)).

without providing a reason.  Compl. ¶ 23.  The MPD General Order was upheld on appeal.

*Griffith v. Lanier*, 521 F.3d 398, 399 (D.C. Cir. 2008).

**B.      Procedural Background**

LeFande filed this action in February 2009.  In his complaint, LeFande contends that his

January 2008 termination was unlawful because it was in retaliation for his bringing the *Griffith*

litigation.  LeFande also contends that his firing violated the putative settlement agreement in

*LeFande I*, resulting in a breach of contract.  Finally, he argues that his termination constitutes

defamation because it will be incorporated into his "personnel jacket" and will cause injury to his

reputation and professional standing.

In June 2009, Judge Kennedy determined that LeFande failed to state a First Amendment

retaliation claim because his role in the *Griffith* lawsuit "did not relate to a matter of public

concern."  *LeFande v. District of Columbia*, Civ. No. 09-217, slip op. at 6 (D.D.C. June 25,

2009) [#9].  Having found that LeFande's speech did not relate to a matter of public concern, the

court did not address whether LeFande was able to satisfy any of the other elements of a First

Amendment retaliation claim.  The court then declined to exercise supplemental jurisdiction over

LeFande's common law breach of contract and defamation claims and dismissed his lawsuit.  *Id.*

at 7.

LeFande appealed.  In July 2010, the D.C. Circuit reversed Judge Kennedy's

determination that LeFande's speech did not relate to a matter of public concern and remanded

the case for further proceedings.  *See LeFande v. District of Columbia*, 613 F.3d 1155 (D.C. Cir.

2010).  Following the D.C. Circuit's decision, the District submitted the motion presently before

this Court.  The District seeks to dismiss LeFande's breach of contract and defamation claims as well as LeFande's request for punitive damages.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for failure to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  In evaluating whether a complaint is sufficient to withstand a motion to dismiss under Rule 12(b)(6), "the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor."  *Sieverding v. Dep't of Justice*, 693 F. Supp. 2d 93, 100 (D.D.C. 2010).  Although the court must construe the complaint in a light most favorable to the plaintiff, the court is not required to accept  factual allegations or inferences that are unsupported by facts.  *City of Harper Woods Emps' Ret. Sys. v. Olver*, 589 F.3d 1292, 1298 (D.C. Cir. 2009).

## III. ANALYSIS

### A.    Breach of Contract

Under District of Columbia law, "[t]here is a presumption that a hiring not accompanied by an expression of a specific term of duration creates an employment relationship terminable at will by either party at any time."  *Perkins v. Dist. Gov't Emps. Fed. Credit Union*, 653 A.2d 842, 842 (D.C. 1995) (quoting *Nickens v. Labor Agency of Metro. Wash.*, 600 A.2d 813, 816 (D.C. 1991)) (internal quotation marks omitted).  Put another way, "the mutual promise to employ and serve creates a contract terminable at will of either party."  *Bell v. Ivory*, 966 F. Supp. 23, 29 (D.D.C. 1997) (internal quotation marks omitted).  In a relationship governed by the at-will doctrine, an employee can be fired for any reason or no reason.  *Wemhoff v. Investors Mgmt. Corp.,* 528 A.2d 1205, 1208 n.3 (D.C. 1987).  "Termination of employment, then, does not

breach an at-will employment contract, because by its very terms the agreement contemplates that either party may end the employment relationship, with or without cause." *Daisley v. Riggs Bank*, 372 F. Supp. 2d 61, 67 (D.D.C. 2005) (citations omitted).

There are generally two ways a party can rebut the presumption of at-will employment in order to bring a wrongful discharge claim under a breach of contract theory. First, parties can provide evidence that they intended to contract for a fixed period of employment. *Nickens*, 600 A.2d at 816. Alternatively, they can provide evidence that the agreed-upon employment can only be terminated upon specific preconditions. *Id.* In dispelling the at-will presumption, "[t]he controlling factor is the intent of the parties with respect to the terms of the contract." *Hodge v. Evans Fin. Corp.*, 707 F.2d 1566, 1568 (D.C. Cir. 1983).

In this case, LeFande argues that the settlement agreement reached between himself and the District in *LeFande I* created a contract between the two parties. Compl. ¶ 30. According to LeFande's complaint, under the terms of that agreement, the District made "an express promise to return him to his position." Compl. ¶ 21. Thus, when LeFande was terminated from his position as a PRO in 2008, he contends that his termination constituted a breach of the 2006 contract. Compl. ¶¶ 29–32. The District responds that there can be no breach of contract because LeFande was an at-will employee.[2]

---

[2]     The District offers two arguments in support of its assertion that LeFande was an at-will employee. First, the District argues that the terms of the putative settlement agreement in *LeFande I*, as described in the complaint, do not dispel the presumption of at-will employment. Def.'s Mem. at 6–8; Def.'s Reply at 2–3. Second, the District argues that the MPD General Order, upheld in *Griffith v. Lanier,* 521 F.3d 398 (D.C. Cir. 2008), caused LeFande's status to be at-will. Def.'s Reply at 3. According to the reply brief, "When plaintiff resumed his position as a voluntary officer with MPD [after the resolution of *LeFande I*], plaintiff subsequently became an 'at-will' employee." *Id.* (citing *Griffith*, 521 F.3d 398). To the extent that the District is inviting this Court to determine whether the MPD General Order changed LeFande's

The District's argument is well taken.  Assuming the existence of a settlement agreement in which the District made "an express promise to return [LeFande] to his position," Compl. ¶ 21, the complaint does not put forward any factual allegations from which the Court can infer that anything but an at-will employment relationship existed.  LeFande does not allege that the District agreed that his employment would be for a fixed period.  He does not allege that the District agreed that he would be subject to termination only upon certain preconditions.  And he does not describe any circumstances from which it could be reasonably inferred that he and the District intended to create anything other than an at-will relationship.  LeFande's allegation that the District agreed to "return him to his position" amounts to an allegation that the District agreed to employ LeFande and that LeFande agreed to be employed.  Under District law, "the mutual promise to employ and serve creates a contract terminable at the will of either party." *Bell*, 966 F. Supp. at 29.  Thus, LeFande has not alleged any facts that, if taken as true, would rebut the presumption of at-will employment.  Accordingly, LeFande's breach of contract claim must be dismissed.[3]

---

employment status from not being at-will to being at-will, the Court declines that invitation. LeFande specifically identifies the *LeFande I* settlement agreement as the contract that has been breached.  Accordingly, the Court will examine only whether LeFande's termination was unlawful because it breached that putative agreement.

[3]     Under the portion of the Complaint in which LeFande asserts a breach of contract claim, he states that the District "violated the good faith covenants in contracting by again terminating the Plaintiff without any stated cause just two years after making the settlement agreement."  Compl. ¶ 32.  While every contract in the District of Columbia contain an implied covenant of good faith and fair dealing, parties to an employment at-will agreement cannot claim a breach of this duty.  *Paul v. Howard Univ.,* 754 A.2d 297, 310 n.28 (D.C. 2000).  Thus, to the extent that LeFande also asserts a breach of the covenant of good faith and fair dealing, LeFande's claim fails for the same reason that his breach of contract claim fails: he has not rebutted the presumption that his relationship with the MPD was at-will.

**B.      LeFande Cannot Properly State a Public Policy Exception to the At-Will Doctrine**

Although LeFande's complaint does not include a tort-based claim for wrongful

discharge in violation of public policy, his brief opposing the District's motion to dismiss asserts

that "the prior protected speech was, at a minimum, a substantial or motivating factor" in his

termination.  Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") at 2.  Liberally construing

these allegations in a light most favorable to the plaintiff, LeFande's contentions could plausibly

be interpreted as alleging a claim against the District for the tort of wrongful discharge in

violation of public policy.

District of Columbia courts recognize an exception to the at-will employment doctrine.

In *Adams v. George W. Cochran & Co.*, 597 A.2d 28, 32 (D.C. 1991), the D.C. Court of Appeals

held that an intentional tort for wrongful discharge exists where "the sole reason for the discharge

is the employee's refusal to violate the law, as expressed in a statute or municipal regulation."

597 A.2d at 34.  The court later clarified, in *Carl v. Children's Hospital*, 702 A.2d 159, 160

(D.C. 1997) (en banc), that the "'very narrow exception' created in *Adams* should not be read in a

manner that makes it impossible to recognize any additional public policy exceptions to the

at-will doctrine that may warrant recognition."  As outlined in *Carl* and subsequent case law,

courts may consider requests to recognize additional public policy exceptions on a case-by-case

basis pursuant to the following instructions:

> The court should consider seriously only those arguments that reflect a clear mandate of
> public policy—i.e., those that make a clear showing, based on some identifiable policy
> that has been "officially declared" in a statute or municipal regulation, or in the
> Constitution, that a new exception is needed.  Furthermore, there must be a close fit
> between the policy thus declared and the conduct at issue in the allegedly wrongful
> termination.

*Id.* at 164 (Terry, J., concurring) (footnotes omitted); *accord Liberatore v. Melville Corp.*, 168

F.3d 1326, 1331 (D.C. Cir. 1999) (stating that "the effective holding of the en banc court" in

*Carl* was that circumstances other than an employee's outright refusal to violate a law can

constitute grounds for a public policy exception if "solidly based on a statute or regulation that

reflects the particular public policy to be applied") (internal quotation marks omitted).

Even where there is a showing of a clearly identifiable policy, the D.C. Court of Appeals

has refused to find new exceptions to the doctrine of at-will employment where the legislature

has already "creat[ed] a specific, statutory cause of action to enforce" the public policy at issue.

*See Carter v. District of Columbia*, 980 A.2d 1217, 1225–26 (D.C. 2009) (declining to create a

public policy exception where the plaintiff's conduct "fell squarely under the aegis of the

District's Whistleblower Protection Act," which "provides that an employee aggrieved by a

prohibited personnel action may bring a civil action for monetary and equitable relief"); *see also*

*McManus v. MCI Commc'ns Corp.*, 748 A.2d 949, 957 (D.C. 2000) (refusing to create a public

policy exception for claims of discrimination because the D.C. Human Rights Act already

protects the same public policy); *Hicks v. Assoc. of Am. Med. Colls.*, 503 F. Supp. 2d 48, 55

(D.D.C. 2007) (finding that the Fair Labor Standards Act and D.C. Minimum Wage Act provided

the plaintiff's exclusive remedy for his employer's alleged retaliatory conduct, precluding

application of wrongful discharge in violation of public policy).

Here, there is no suggestion that LeFande was terminated for refusing to violate the law.

Therefore, the *Adams* standard is inapplicable.  As to whether LeFande can rely on the broader

standard outlined in *Carl,* the Court notes that LeFande has brought a claim for the alleged

deprivation of his First Amendment rights pursuant to 42 U.S.C. § 1983.  *See* Pl.'s Compl. ¶¶ 3,

8

24–28.  In enacting Section 1983, Congress created a "specific, statutory cause of action to enforce" deprivations of constitutional rights, encompassing the type of First Amendment violations alleged by LeFande in his complaint.  *Carter*, 980 A.2d at 1226.  Accordingly, the Court finds that "this is not a case where we have any need to create a new exception to the at-will employment doctrine in order to vindicate an important public policy" and therefore "decline[s] to recognize a novel, competing cause of action for wrongful discharge at common law."  *Id.*  As such, to the extent that LeFande has brought a wrongful discharge claim, his claim must fail.  The Court will not recognize a new exception to the at-will employment doctrine.

**C.      LeFande's Defamation Claim Must Also be Dismissed**

To establish a defamation claim in the District of Columbia, a plaintiff must show (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the fault of the defendant in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm.  *Jankovic v. Int'l Crisis Group,* 494 F.3d 1080, 1088 (D.C. Cir. 2007).

**1.      LeFande Fails to Meet the Publication Requirement of a Claim for Defamation**

With respect to the second element in a defamation claim—publication— a cause of action for defamation "requires proof of publication of the defamatory statement to a third party." *Oparaugo v. Watts*, 884 A.2d 63, 73 (D.C. 2005).  "'This is because the interest protected by the law of defamation is that in reputation and it is therefore essential to liability for either libel or slander that the defamation be communicated to someone other than the person defamed.'"

9

*Pinkney v. District of Columbia*, 439 F. Supp. 519, 527 (D.D.C. 1977) (quoting *Wash. Annapolis Hotel Co. v. Riddle*, 171 F.2d 732, 737 (D.C. Cir. 1948)).  For a defamation claim to be actionable, it is not enough that, in the future, a publication might take place.  *Id.* at 528.

In *Pinkney*, the plaintiff alleged that his employer "contributed to a chain of events that threatened the publication" of information about the plaintiff's dismissal to "prospective employers who might request and examine his personnel file when considering whether to employ him."  *Id.*  The court held that such a scenario could not satisfy the publication element.  *Id.*  The court reasoned that "the threat of a defamatory publication, no matter how imminent it may be, is not itself actionable as defamation.  Only if the threat is carried out is the protected interest in unimpugned reputation implicated."  *Id.*

In this case, LeFande contends that MPD's decision to remove him from his position "implies that such termination is proper and for cause."  Compl. ¶ 34.  According to LeFande, this constitutes defamation because, "by incorporating the termination into Plaintiff's personnel jacket, MPD communicates information known to be false to future readers."  Compl. ¶ 36.  He further asserts that "[s]uch communication will inevitably cause the Plaintiff injury to his reputation and professional standing."  Compl. ¶ 38.

The District argues that LeFande has failed to allege specific third-party individuals who received the District's allegedly defamatory statements.  Def.'s Mem. at 10–11.  The District contends that because LeFande does not allege that the District's purportedly defamatory statement was published to specific individuals, his defamation claim must fail.  *Id.*

The District's argument is persuasive.  LeFande does not identify a person or category of persons to whom any allegedly defamatory statement was published.  Instead, LeFande asserts

10

that information about his termination might be read by "future readers" of his personnel jacket.

Compl. ¶ 36.  In *Pinkney,* the statement complained of was sent only to the plaintiff, causing the

court to find that the plaintiff failed to satisfy the publication element.  Here, LeFande has not

even alleged that he has read the information contained in his personnel jacket.  Because, as in

*Pinkney*, LeFande complains only of the threat that allegedly defamatory material might be read

by third parties, he, too, fails to satisfy the publication element.  Accordingly, the Court finds that

LeFande has not plead an actionable claim for defamation.

### 2.    LeFande Fails to Allege a Defamatory Statement

The District also maintains that LeFande fails to satisfy the first element of a defamation

claim because he fails to allege that the District made a false and defamatory statement.  Def.'s

Mem. at 10.  *See Jankovic v. Int'l Crisis Group,* 494 F.3d 1080, 1088 (D.C. Cir. 2007) (requiring

that a plaintiff establish that "the defendant made a false and defamatory statement concerning

the plaintiff").  LeFande responds that defamatory meaning can be implied from the statement in

LeFande's personnel jacket that LeFande was terminated.  Such a statement, LeFande argues,

implies lack of professional integrity or competence.  Pl.'s Opp'n at 4.  The Court agrees with the

District.

"In an action for defamation, the courts are charged with the responsibility of determining

whether a challenged statement is capable of conveying a defamatory meaning."  *White v.*

*Fraternal Order of Police,* 909 F.2d 512, 518 (D.C. Cir. 1990) (internal quotation marks and

citations omitted).  A statement is defamatory "if it tends to injure a plaintiff in his trade,

profession, or community standing."  *Parnigoni v. St. Columba's Nursery School*, 681 F. Supp.

2d 1, 14–15 (D.D.C. 2010) (internal quotation marks omitted).  Statements may be defamatory

11

on their face, or they may be defamatory because of what they imply.  *White,* 909 F.2d at 518.  It is not enough, though, for the statement to be offensive; rather, it must be "odious, infamous or ridiculous."  *Parnigoni*, 681 F. Supp. 2d at 15 (quotation marks omitted).  "Courts must therefore be careful not to imply defamatory meaning from statements that are not capable of such meaning."  *Id.*

Here, LeFande's claim for defamation is based on the argument that future readers of his personnel jacket may wrongly infer that LeFande was terminated for cause, thus resulting in injury to LeFande's professional reputation.  While courts in the District of Columbia recognize a cause of action for defamation by implication, such claims are only actionable if a plausible implied meaning suggests something "odious, infamous or ridiculous."  *Id.*  Courts in the District refuse, as a matter of law, to find defamatory meaning where the claim of defamation is based on the interpretation third parties place upon the termination of an at-will employee.  *Clampitt v. Am. Univ.*, 957 A.2d 23, 40–41 (D.C. 2008) ("We are not prepared to hold that a cause of action for defamation arises merely upon the interpretation that third parties have placed upon a termination. . . . Such a holding would, we think, be contrary to our doctrine of at-will employment.").  Instead, something more is required.  For example, in *Clampitt,* the court allowed a defamation claim to proceed where the plaintiff contended that the employer stated that the plaintiff was terminated and also publicly appeared to adopt allegations that the plaintiff engaged in financial mismanagement.  *Id.* at 41–42.  In this case, LeFande has alleged only that his personnel jacket states that he was terminated.  Accordingly, LeFande's defamation claim

must be dismissed for the additional reason that the statement at issue is not capable of

defamatory meaning.[4]

**C.      Punitive Damages**

The District has moved to dismiss LeFande's claim for punitive damages.  The District

contends that, as a municipality, it is immune from punitive damages.  In support of this

argument, the District relies on *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981),

in which the Supreme Court held that "a municipality is immune from punitive damages under

42 U.S.C. § 1983."  In a footnote, the Supreme Court preserved a possible exception, suggesting

"[i]t is perhaps possible to imagine an extreme situation where the taxpayers are directly

responsible for perpetrating an outrageous abuse of constitutional rights."  *Id.* at 267 n.29.

In this case, LeFande brings three causes of action: a First Amendment claim pursuant to

§ 1983; a common law breach of contract claim; and a common law defamation claim.  For the

reasons explained above, the Court dismisses LeFande's common law claims.  Therefore,

LeFande's First Amendment claim, brought pursuant to § 1983, is the only remaining claim.

Because the District is a municipality, *Butera v. District of Columbia*, 235 F.3d 637, 658 (D.C.

Cir. 2001), and because LeFande does not allege any facts suggesting the taxpayers are

responsible for the alleged violation of LeFande's First Amendment rights, the Court concludes

_____

[4]      The District makes several additional arguments as to why LeFande's defamation claim fails as a matter of law.  First, the District argues that LeFande's defamation claim should be dismissed for the reason that LeFande failed to comply with D.C. Code § 12-309, which requires a plaintiff who files suit against the District for unliquidated damages to provide notice to the District of the "approximate time, place, cause, and circumstances of the injury or damages."  D.C. Code § 12-309.  Second, the District argues that LeFande fails to satisfy the third and fourth elements of a defamation claim.  Because the Court finds that LeFande's defamation claim fails for the reason that he cannot satisfy the publication or defamatory statement elements, the Court does not reach these additional issues.

that LeFande is unable to seek punitive damages.  *See E. Trans-Waste of Md., Inc. v. District of Columbia*, 2006 WL 167665, at *5 (D.D.C. 2006) (citing *Fact Concerts* and dismissing plaintiff's claim for punitive damages against the District of Columbia because the plaintiff failed to allege any facts suggesting the District's taxpayers were responsible for the constitutional violations alleged to have been suffered).

LeFande attempts to get around the hurdle posed by *Fact Concerts* by arguing that the chief of MPD—a policymaker—was personally involved in his termination, thereby authorizing punitive damages pursuant to the D.C. Circuit's statement in *Daskalea v. District of Columbia*, 227 F.3d 433, 447 (D.C. Cir. 2000) that punitive damages may be available where a policymaker has "intentionally adopted the unconstitutional policy that caused the damages in question." LeFande's citation to *Daskalea* cannot save his punitive damages claim.  The language from the opinion that LeFande relies on—providing that punitive damages may be available where a policymaker "intentionally adopted the unconstitutional policy that caused the damages in question"—is taken from a portion of the *Daskalea* opinion in which the D.C. Circuit considered when punitive damages may be available for a claim brought under D.C. law, *not* § 1983. *Daskalea*, 227 F.3d at 447.  With respect to the availability of punitive damages under § 1983, the *Daskalea* court did not authorize punitive damages to be awarded based on the actions of a municipality's policymaker.  *Id.* ("Daskalea did not seek punitive damages under 42 U.S.C. § 1983, conceding that she was not eligible for them in light of the Supreme Court's decision in *City of Newport v. Fact Concerts, Inc.* . . . .").  Indeed, the *Daskalea* opinion affirmed the rule from *Fact Concerts* that, in § 1983 cases, punitive damages are only available against municipalities in the extreme situation where a municipality's taxpayers bear responsibility.  *See*

14

*id.*  The *Daskalea* language regarding policymakers is therefore not applicable here, where LeFande's only remaining claim is a § 1983 one.

## IV. CONCLUSION

For the foregoing reasons, it is this 21st day of May, 2012 hereby **ORDERED** that the District's motion to dismiss [#14] is **GRANTED**.  Accordingly, LeFande's breach of contract and defamation claims will be dismissed.  In addition, LeFande may not seek punitive damages in this action.

_____
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE

15